IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LIONEL MENDOZA,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )    1:09cv163 (LMB/IDD)
                                   )
CAROLINE J. CEDERQUIST et al.,     )
                                   )
          Defendant.               )

MEMORANDUM OPINION

Defendants have moved to dismiss Counts 2 through 5 of the plaintiff's First Amended Complaint.  For the reasons stated below, defendants' motion will be granted in part and denied in part.

I. Background

Plaintiff Lionel Mendoza, a citizen of France authorized to work in the United States, moved to Virginia in 1999 to work as a business analyst for Cuisine Solutions, a subsidiary of a French company.  While employed there, Mendoza developed a business relationship with co-defendant Edward Cederquist, the part-owner of one of Cuisine Solutions' customers, co-defendant Cederquist Medical Wellness Center ("the Wellness Center"), a medical facility that treats patients in the areas of diet and weight management.  The other part-owner of the Wellness Center is Cederquist's wife, co-defendant Dr. Caroline Cederquist.

In 2004, when Mendoza was no longer working for Cuisine Solutions, he contacted Edward Cederquist for assistance in

finding a job.  The Cederquists, seeking to expand their business by creating a line of diet meals for sale, sought to hire Mendoza, who had experience in the food industry, to help them launch this new venture.  After a series of negotiations, Mendoza was hired as Vice President of Business Development for the Culinary Division of the Wellness Center.  According to the Amended Complaint, with Mendoza's assistance, the Cederquists created several companies that have successfully marketed diet foods nationwide, including Diet to Your Door d/b/a Bistro MD, the Smart Distribution Center, and co-defendant Dr. Cederquist's Good For You Gourmet.  Mendoza further alleges that until he began working for them, the Cederquists had virtually no experience in food sales, and that he was largely responsible for the success of this aspect of the defendants' business.

The employment negotiations between the defendants and Mendoza allegedly occurred during July and August 2004, and Mendoza began working for the defendants in August 2004. Attached to the First Amended Complaint is a letter dated June 22, 2004, which the plaintiff alleges was actually written on August 3, 2004 but back-dated.[1]  The letter, signed by Caroline

---

[1]Considering this letter agreement, as well as the addendum mentioned infra, does not convert the instant Rule 12(b)(6) motion to dismiss into a motion for summary judgment, because these materials are "integral to and explicitly relied on in the Complaint" and their authenticity has not been challenged. Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

Cederquist, states that its purpose is "to confirm in writing the
terms of [Mendoza's] employment with Cederquist Medical Wellness
Center, Inc. as VP of Business Development for the Culinary
Division." Under the heading "Compensation," the letter states:

> As we discussed and agreed during our conversations,
> your compensation will be based on achievements with no
> limits on earnings.
> Your compensation will be 20% of EBITDA for the
> Culinary Division.
> Your base salary will be $35,000 per year.
> You will be entitled to 3 weeks vacation a year.

First Am. Compl. Ex. A.  Mendoza asserts that this letter was
modified by an unsigned document titled "Addendum to Employment
Agreement dated June 22, 2004," which was also completed on
August 3, 2004.  The addendum states:

> 1. Your compensation will be based at 25% of gross
> margin until such time you attain a salary of $75,000
> per year.  At this time the compensation will revert
> back to 20% of EBITDA.
>
> 2. If at such time we decide to sell the company, you
> will be additionally compensated the following:
>        a. Total company sales > $3,000,000, 5%
>        b. Total company sales > $4,500,000, 7.50%
>        c. Total company sales > $6,000,000, 10%
>
> The above numbers are to be calculated on net proceeds
> collected after all related sales expense and less any
> capital invested.  It is also based that you are still
> working for the company.

First Am. Compl. Ex. B.

Mendoza alleges that the two written documents memorialized
some, but not all, of his terms of employment.  Specifically, he
claims that the parties also orally agreed that Mendoza would

-3-

receive an ownership share in the companies that he helped create
and manage.  According to Mendoza, the parties "agreed that they
would settle upon an ownership structure whereby Mr. Mendoza
would become a co-owner of the food-related aspects of the
business," First Am. Compl. ¶ 10, and he began working for the
defendants in part in reliance on the promise that he would
receive an ownership interest.  Mendoza further claims that
Edward Cederquist "repeatedly and purposefully reiterated" the
promise of an ownership interest to him "[r]egularly throughout
the course of the employment relationship," id. ¶ 46, and met
with Mendoza on several occasions and specifically discussed the
ownership interest.  Mendoza also asserts that on at least two
occasions, Cederquist attempted to justify his failure to provide
Mendoza with official ownership shares, once stating that it
would be more beneficial for Mendoza to receive an official
interest only when the companies began to make a profit, and once
claiming that the failure to provide Mendoza with official shares
was merely an administrative oversight.

Mendoza claims that he never received the ownership shares
he was promised.  In addition, he claims that he never received
any of the bonus payments based on a percentage of the companies'
earnings (either 25% of the gross margin or 20% of EBITDA) that
he was promised in the written letter agreement and addendum.

On November 24, 2006, Mendoza was laid off by the

-4-

defendants.  He was told that his termination was due to "significant 'organizational' changes," id. ¶ 58; however, Mendoza asserts that he was fired so that the defendants could avoid paying him his bonus payments, ownership interest, and percentage upon sale of the company.  He further alleges that the defendants never intended to provide him with any of these forms of compensation, and repeatedly made promises to him - both before and during his employment - while intending not to keep them.

Mendoza has filed a five-count Amended Complaint, alleging breach of contract, unjust enrichment, quantum meruit, fraud in the inducement, and intentional misrepresentation.[2]  The defendants have moved to dismiss all counts except the breach of contract claim in Count 1.

## II. Standard of Review

In reviewing a Rule 12(b)(6) motion to dismiss, a court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations, and construes facts in the light most favorable to the plaintiff.  See Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  However, "a plaintiff's obligation to provide the grounds

---

[2]This action was initiated in the Circuit Court of Arlington County, and was removed to this court on February 13, 2009.

-5-

of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).

### III. Discussion

A. Unjust Enrichment and Quantum Meruit Claims.

The defendants have moved to dismiss Counts 2 and 3, the unjust enrichment and quantum meruit claims, arguing that because Mendoza has pled the existence of an express contract, he therefore cannot plead counts theat rely on an implied contract. See Southern Biscuit Co. v. Lloyd, 6 S.E.2d 601, 606 (Va. 1940) (holding that "an express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter"). However, under Virginia and federal law, a plaintiff is permitted to plead equitable theories of relief such as unjust enrichment and quantum meruit as alternatives to contract recovery. See Ford v. Torres, No. 1:08cv1153, 2009 WL 537563, at *4 (E.D. Va. Mar. 3, 2009). Here, the plaintiff has properly pled the unjust enrichment and quantum meruit claims in the alternative, alleging both of these theories specifically "[i]n the event the trier-of-fact determines either that there is no express contract that governs each of the rights of the parties

-6-

expressed herein, or that the express contract between the parties does not govern each of the subject matters upon which Plaintiff seeks to recover damages." First Am. Compl. ¶¶ 76, 83.

Alternative pleading of an implied contract, and the remedies of unjust enrichment and quantum meruit, is particularly appropriate in the case at bar, where the plaintiff has claimed that any contractual rights were established through a combination of oral and written agreements, and where neither of the alleged written agreements - the letter or the addendum - was signed by both parties or contained an integration clause. This fact pattern suggests the possibility that the parties may disagree as to both the existence and the scope of any contract. Under such circumstances, pleading in the alternative is eminently reasonable. See Ford, supra, at *4, quoting Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc., 190 F. Supp. 2d 785, 792-93 (D. Md. 2002) (holding that a plaintiff is "not barred from pleading alternative theories of recovery 'where the existence of a contract concerning the subject matter is in dispute'"). Given that the plaintiff has explicitly pled the unjust enrichment and quantum meruit claims in the alternative, and has attached to the First Amended Complaint written agreements that may very well not be contracts, defendants' contention that "[p]laintiff's allegations leave no room for an argument by him that there was anything other than an express

-7-

agreement between the parties," Def.'s Mem. 6, is misplaced.[3]

Clearly, if Mendoza prevails, he will not be able to recover on both his contract and implied contract claims for the same matters.  However, whether the parties had an express or implied contract, and, if so, the terms of such a contract, are matters to be resolved after discovery, not on a motion to dismiss. Accordingly, the Motion to Dismiss will be denied as to Counts 2 and 3.

B. Fraud in the Inducement and Intentional Misrepresentation Claims.

The defendants have also moved to dismiss Counts 4 and 5, which allege fraud in the inducement and intentional misrepresentation.  In Count 4, Mendoza claims that Edward Cederquist induced him to work for the defendants by promising him bonus payments, an ownership interest, and a share in profits upon a sale of the company, while intending not to keep these promises.  In Count 5, Mendoza asserts that Cederquist continued to make these promises, without intending to keep them, throughout Mendoza's employment with the defendants.

The defendants argue that such allegations do not state a

---

[3]Along the same lines, the defendants have argued that Mendoza may not pursue equitable remedies because he has an adequate remedy at law.  However, if the factfinder determines that no contract existed, or that any contract between the parties did not cover all of the claims at issue, then Mendoza clearly would not have an adequate remedy at law.

claim for fraud because any statements allegedly made by
Cederquist pertained to future, not present, conduct, and that
fraud must related to a misrepresentation of a present fact.  See
Soble v. Herman, 9 S.E.2d 459, 464 (Va. 1940) (holding that
"fraud must relate to a present or a pre-existing fact, and
cannot ordinarily be predicated on unfulfilled promises or
statements as to future events").  However, Mendoza has properly
pled claims for fraud and misrepresentation by alleging that
Edward Cederquist made promises while intending not to keep them.
See Colonial Ford Truck Sales v. Schneider, 325 S.E.2d 91, 94
(Va. 1985) (holding that making a promise made with intent not to
keep it is a misrepresentation of present fact and therefore
actionable as fraud).

Defendants next argue that the fraud counts are not pled
with specificity.  See Fed. R. Civ. P. 9(b); Mortarino v.
Consultant Eng. Servs., Inc., 467 S.E.2d 778, 782 (Va. 1996).
However, as Mendoza states in his response, he has alleged the
speaker (Edward Cederquist), the content (promises to provide
specific forms of compensation), and several specific occasions,
including dates, on which the alleged misrepresentations
occurred.  He has therefore alleged fraud with the required
particularity.  The defendants also attack the plaintiff's
allegations regarding the defendants' state of mind, which they
claim are speculative and inconsistent with other facts alleged

-9-

in the First Amended Complaint.  However, to dismiss the fraud claims on this ground would be inconsistent with the requirement that at this early stage, the truth of all facts alleged, and the existence of any fact that can be proved consistent with the allegations in the complaint, should be assumed.

Finally, defendants argue that the fraud and misrepresentation claims are not actionable because they are based purely on the contractual relationship between the parties. Virginia law holds that "to avoid turning every breach of contract into a tort . . . in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." Augusta Mutual Ins. Co. v. Mason, 645 S.E.2d 290, 294 (Va. 2007) (internal quotation marks and citations omitted).  If, however, a party to a contract makes a "false representation of a material fact, constituting an inducement to the contract, on which [a party] had a right to rely," such a misrepresentation is grounds for recovery in tort as well as in contract.  Id. at 293, quoting George Robberecht Seafood, Inc. v. Maitland Bros. Co., 255 S.E.2d 682, 683 (Va. 1979).

The above rule requires that the Motion to Dismiss be denied as to Count 4, fraud in the inducement, but granted as to Count 5, intentional misrepresentation.  In Count 4, Mendoza has pled that Edward Cederquist made misrepresentations that induced

-10-

Mendoza into entering into an employment relationship with him.
Such an allegation states a separate common law claim for fraud
in the inducement apart from any breach of contract claim.  See
City of Richmond v. Madison Mgmt. Group, Inc., 918 F.2d 438, 447
(4th Cir. 1990) (holding that plaintiffs stated a claim for fraud
when they alleged that the defendants made promises to supply a
certain type of pipe, with intent not to do so, and that these
promises induced the plaintiff into entering into a contract);
Tidewater Beverage Servs. v. Coca Cola Co., 907 F. Supp. 943, 948
(E.D. Va. 1995) (holding that plaintiffs stated a claim for fraud
when alleging that the defendant had induced the plaintiff to
enter into a contract by falsely promising not to use a local
bottler to service and install soda fountains); Augusta Mutual,
645 S.E.2d at 293.  In contrast, in Count 5, Mendoza has alleged
that the defendants made misrepresentions after the parties had
already entered into an employment agreement, and that the
misrepresentations concerned the defendants' intentions to
fulfill the very terms of the agreement.  Misrepresentations
concerning a duty owed solely by virtue of a contract are not
independently actionable as fraud.  See Richmond Metro. Auth. v.
McDevitt St. Bovis, Inc., 507 S.E.2d 344, 347-48 (Va. 1998)
(dismissing a claim for fraud where the complaint alleged that
the defendant, who was already in a contract with the plaintiff,
made misrepresentations when periodically signing certifications

-11-

to obtain payment under the contract).  As such, Count 5 will be dismissed.

### IV. Conclusion

For the above reasons, the defendant's Motion to Dismiss will be denied as to Counts 2, 3, and 4, but granted as to Count 5, by an Order to be issued with this opinion.

Entered this __6th__ day of May, 2009.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

-12-